The Ford Alexander Corporation, a corporation v. Commissioner.
Ford Alexander Corp. v. Commissioner
Docket No. 9552.
United States Tax Court
1947 Tax Ct. Memo LEXIS 26; 6 T.C.M. (CCH) 1251; T.C.M. (RIA) 47316; November 28, 1947
*26 George Bouchard, Esq., 650 S. Spring St., Los Angeles 14, Calif., for the petitioner. R. E. Maiden, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's excess profits taxes for the years 1941, 1942 and 1943 in the respective amounts of $730.82, $10,095.03 and $10,656.34. Only that part of the deficiencies is here in issue which results from respondent's determination that petitioner's invested capital as disclosed by its returns should be reduced in the amount of $56,364.31 representing "property paid in for stock". This adjustment is explained by respondent in his statement attached to the notice of deficiency as follows: "(a) It is held that the adjusted basis as of January 1, 1923 of intangible assets, consisting of patents, rights to use of patents, and for goodwill, acquired by you from Ford Alexander on January 1, 1923, is $33,545.50. Since the amount claimed in your return as paid in for stock with respect to such assets is $69,809.81, invested capital has been reduced $36,264.31. Sections 714 to 718 of the Internal Revenue Code. "No basis has been established *27 for certain 'patent rights' alleged to have been acquired from Ford Alexander in 1924. Since the amount claimed in your return as paid in for stock with respect to such asset is $20,100.00, such amount is disallowed. "These adjustments result in a disallowance of invested capital claimed in your return to the extent of $56,364.31." Findings of Fact Petitioner is a California corporation which filed it tax returns for the taxable years with the collector of internal revenue for the sixth collection district of California. It was organized in 1922 for the purpose of acquiring the assets and business of a sole proprietorship owned and operated by one Ford Alexander. From 1911 to and through 1917 Ford Alexander and one C. H. Allison had been engaged as partners in the business of shooting or blasting out oil wells by the use of explosives. This blasting is frequently done at great depth and under heavy hydrostatic pressure. It is done for the purpose, among other things, of increasing the production of the oil well, getting water out of the well and correcting difficulties in drilling and operating. In this business the correct detonation of explosives is important. In 1914 U. *28 S. Patent No. 1,094,692 was issued to Allison and in 1915 he became the owner of U.S. Patent No. 1,639,651. Both patents covered a device for the protection of electric caps used in shooting oil wells. Allison owned the patents individually, but the partnership used the patents without paying royalties to him. The partnership of Alexander and Allison was dissolved as of December 31, 1917. Alexander and Allison each continued the same business as a sole proprietor, Alexander operating in what was known as the Northern California oil fields, embraced roughly in Kern and Fresno counties, and Allison operating in the rest of the state. At the time of the dissolution of the partnership, Alexander purchased certain physical assets from Allison and also bought from him the right to use in the Northern California oil fields the electric caps covered by the patents owned by Allison. Alexander paid to Allison for this right to use the patented caps the sum of $20,000. On June 10, 1919, Allison obtained U.S. Patent No. 1,306,510 covering an improvement in the device for the protection of electric caps. In the latter part of 1919 Allison lost his left arm and was unable to continue in the *29 business of shooting oil wells. In September 1919 Alexander purchased from Allison the physical assets of the latter used in the business theretofore carried on by him in Southern California and also purchased from Allison the right to use the patented electric caps, known as the Allison Detonator, "in the whole of the State of California, but not elsewhere", for the sum of $40,000 which was paid in 1920. In 1921 Alexander purchased from Allison the full title to patents above referred to for the sum of $8,000. This was done in order to enable Alexander to institute legal proceedings to protect the patents from infringement. On March 6, 1917, Alexander obtained in his own name a patent covering a protection for blasting caps at a cost of $1,889.81 which included attorney's fees, filing, experimental work, machine shop work and drawings. On January 1, 1923, petitioner corporation acquired all of the assets of the business formerly carried on by Ford Alexander, as sole proprietor, including the patents above referred to in exchange for all except two shares of petitioner's capital stock. Opinion KERN, Judge: Respondent, in his brief, correctly states that the issue involved *30 in this proceeding is narrow and purely factual. Both parties agree that the patents referred to in our findings are includible in petitioner's invested capital under section 718(a)(2) of the Internal Revenue Code at their adjusted basis in the hands of Ford Alexander at the time they were transferred to petitioner. The parties are further agreed that this basis would be cost subject to amortization on account of the limited life of the patents. Respondent contends that the cost of these patents to Alexander was $48,000. Petitioner contends that the cost was $69,809.81. The difference between the parties arises by reason of the refusal of respondent, in the absence of documentary evidence, to agree that Alexander paid to Allison on or about January 1, 1918, the sum of $20,000 for the right to use the articles covered by two of Allison's patents in the Northern California oil fields, and to agree that the cost to Alexander of the patent issued to him on March 6, 1917, was the sum of $1,889.81. [1]
*31 Respondent in support of his contention points out that petitioner has no record of these expenditures, that Alexander upon whose testimony petitioner almost wholly relies is the real party in interest and was convicted of filing a false and fraudulent income tax return in 1931, and that the document evidencing the payment of $40,000 by Alexander to Allison in 1920 indicates that this amount was paid for the use of the Allison patents "in the whole of the State of California" which is inconsistent with the earlier expenditure claimed to have been made by Alexander for the use of the patents in Northern California. With regard to the expenditure of $20,000 claimed to have been made in 1918 Alexander testified repatedly and categorically that it had been made, that his records had been informal in those early years and had been misplaced, [2] and a former bookkeeper and accountant of petitioner testified that he had seen either a receipt or a cancelled check evidencing this expenditure. With regard to the cost of his own patent *32 Alexander testified that it amounted to $1,889.81 and was made up of items reflecting the expenses set out in our findings. We have considered all of the matters relied on by respondent in his argument but have nevertheless concluded upon the two questions of fact in favor of petitioner. This we have done because his direct and positive testimony is consistent with a reasonable interpretation of the facts. It is reasonable and natural that when Alexander started in the business of shooting oil wells in Northern California after the dissolution of the partnership he should pay something to Allison for the use of Allison's patents. It is not unreasonable that when Allison was forced to abandon the business in Southern California and Alexander purchased from him the use of the patents in Southern California and the use of a new patent in all California the informal receipt should recite that the payment of $40,000 was "for the use of the Allison Detonator in the whole of the State of California" even though as to two of the patents Alexander already had the right of use in Northern California. With regard to Alexander's own patent it is reasonable to assume that he had some expenses *33 with regard to it and the expenses testified to by Alexander are of the type normally to be anticipated. Put differently it would be unreasonable to conclude, as respondent would have us, that Alexander paid nothing to Allison in 1918 for the use of Allison's patents in Northern California and that Alexander had no expenses in connection with obtaining the patent issued to him in 1917. Respondent on brief concedes that "Since the acquired assets are patents with a life of 17 years, and since the dates of the issuance of the patents are stipulated, the rate of amortization is fixed under the law and, if the rate applied in the statutory notice is at variance therewith, correction will be made in the Rule 50 computation." Decision will be entered under Rule 50. Footnotes
1. It will be noted that while the total amount of the cost of patents to Alexander thus at issue according to the contentions of the parties presented on brief is the same as the total amount involved in the adjustments made by respondent as shown in the statement attached to the notice of deficiency, which we have already quoted, there is some discrepancy as to the individual items.↩
2. It may be pointed out that the transaction between Alexander and Allison as of January 1, 1918, occurred almost 30 years before the hearing herein.↩